*Fee Paid*
*150009213*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

LACHANTAE BUCKNER )
)
      Plaintiff, )
)
v. )
)
)
EQUIFAX INFORMATION SERVICES, )
LLC )
      Defendants. )
)
)

**JURY TRIAL DEMANDED**

Case: 2:26-cv-10503
Assigned To : Michelson, Laurie J.
Referral Judge: Patti, Anthony P.
Assign. Date : 2/12/2026
Description: CMP Buckner V Equifax
Information Services, LLC (lh)

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, LACHANTAE BACKNER, and complains

of the Defendant, Equifax Information Services, LLC ("Equifax"), stating as

follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory damages and cost brought by

LACHANTAE BACKNER against Equifax for violations of the Fair Credit

Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p.

3. Equifax is subject to the provisions of the FCRA and is subject to

the jurisdiction of the Court.

4.     Venue is proper in Detroit, Wayne County, Michigan because the acts complained of were committed and/or caused by the Defendant within Wayne County.

## PARTIES

5.     Mrs. Buckner is a natural person residing in Canton, Wayne County, Michigan.

6.     Mrs. Buckner is a Consumer as defined by 15 U.S.C. § 1681a(c).

7.     Equifax is a Georgia corporation, with a primary business address of 1550 Peachtree Street NW., Atlanta, GA 30309.

8.     Equifax is a nationwide Consumer Reporting Agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet. As a CRA, Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Mrs. Buckner's July 2025 Consumer Disclosure

9.     On or about July 23, 2025, Mrs. Buckner requested a copy of her consumer credit disclosure from Equifax. SEE PLAINTIFF'S EXHIBIT A

10.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mrs. Buckner request, Equifax was required to "clearly and accurately" disclose all information in Mrs. Buckner file at the time of his request, with the limited exception that her Social Security number could be truncated upon request.

11.    Equifax provided an electronic copy of Mrs. Buckner Consumer Disclosure ("Equifax's Disclosure") to via annualcreditreport.com

## Missing Account Numbers, Missing Account Information and Payment History

12.    Making matters even more confusing for Mrs. Buckner, Equifax omitted the full Account Numbers, Missing Account Information and Payment History relating to (1) Bank of America, (1) JPMCB Card Services,.

13.    Bank of America *6532 the full account number, date of last activity, scheduled payment amount, actual payment amount, term duration, date major delinquency 1st reported, deferred payment start date, balloon payment amount, balloon payment date, payment history, payment history in the 24 Month History section scheduled payment amount.

14.    JPMCB Card Services *7972 the full account number, date of last activity, scheduled payment amount, actual payment amount, term duration, date major delinquency 1st reported, deferred payment start date, balloon payment

amount, balloon payment date, payment history, payment history in the 24 month history section scheduled payment amount.

15.    On information and belief, this data furnisher reported the full account numbers, missing account information and payment history belonging to its respective accounts to Equifax, and this information was contained within Equifax's file regarding Mrs. Buckner at the time of his request.

16.    When Equifax produces and sells reports regarding Mrs. Buckner to third parties, the full account numbers, missing account information and payment history are included in its reports.

17.    The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

18.    Having a duty to disclose all of the information regarding the accounts in Mrs. Buckner file, Equifax breached its duty by failing to provide the account numbers, missing account information and payment history as such information is necessary for a consumer to be able to research and evaluate the information contained in his credit file.

19.    Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

20.   Equifax's disclosure contains collection information that stays on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score.

21.   On information and belief, all the aforementioned data furnishers reported full account numbers, missing account information and payment history to Equifax, and this information was contained within Equifax's file on Mrs. Buckner at the time of his request for his consumer disclosure.

22.   Due to widespread systemic problems, Equifax's automated systems omits all but the last two or four account numbers, missing account information and payment history reported by data furnishers.

23.   Equifax knows of this error but, despite such knowledge, has yet to correct it.

24.   The failure to disclose full account numbers, missing account information and payment history violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. See Washington v. Equifax, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '(all information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a

clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

25.    The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. See, e.g., Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

26.    The lack of accurate, full account numbers, missing account information and payment history caused Mrs. Buckner great frustration and emotional distress when trying to understand his credit report and verify it against her own records.

27.    Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of all information' in the file." SEE PLAINTIFF'S EXHIBIT B.

28.    Equifax's omission of the full account numbers, missing account information and payment history greatly decreases a consumer's ability to

understand his consumer credit disclosure, identify the accounts, and compare those accounts with his own records.

## Prevalence of Equifax's Account Number Errors, Missing Account Information and Payment History

29.    On information and belief, Equifax's Disclosure to Mrs. Buckner was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

30.    On information and belief, this same template is used virtually every time a consumer requests their file from Equifax through www.annualcreditreport.com.

31. On information and belief, www.annualcreditreport.com is the location where the majority of consumers obtain their Equifax credit disclosure.

32.    Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number, missing account information and payment history errors.

33.    Thus, every consumer with accounts appearing with missing information in their disclosure who requested their disclosure from Equifax

through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Mrs. Buckner.

34.   Equifax's error has therefore likely affected thousands of consumers.

35.   Equifax has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected.

36.   Equifax's knowing and repeated conduct warrants an award of punitive damages.

37.   Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

38.   Mrs. Buckner has a right to a full and complete disclosure of the contents of her file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

39.   Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Mrs. Buckner deprived her of this right.

## COUNT I
## VIOLATIONS OF THE FCRA

40.     Mrs. Buckner adopts and incorporates paragraphs 1 - 39 as if fully stated herein.

41.     Equifax violated 15 U.S.C. § 1681g(a)(1) when responding to Mrs. Buckner request for her consumer disclosure by failing to clearly and accurately disclose to Mrs. Buckner, a Consumer, all of the information in her file at the time of the request. Specifically, Equifax disclosed Two (2) accounts reported without disclosing the full account number, missing account information and payment history or Two (2) accounts also without the full account numbers, missing account information and payment history even though full account numbers, missing account information and payment history were reported by the data furnishers.

42.     Equifax knowingly provided inaccurate and incomplete information in Mrs. Buckner disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

43.     Equifax is therefore liable to Mrs. Buckner, pursuant to 15 U.S.C. § 1681n, for the greater of her actual damages and statutory damages of up to $1,000 per violation, plus costs.

44.     Alternatively, Equifax's conduct was negligent, and Equifax is therefore liable to Mrs. Buckner, pursuant to 15 U.S.C. § 1681o, for her actual damages, plus costs.

WHEREFORE, Mrs. Buckner respectfully requests that the Honorable Court enter judgment against Equifax for:

a.     The greater of statutory damages of $1,000 per incident and Mrs. Buckner actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or Mrs. Buckner actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     Costs pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d.     Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mrs. Buckner demands a jury trial on all issues so triable.

Respectfully submitted on February 12, 2026, by:

LaChantae Buckner

48251 Whitney CT

Canton, MI 48187

248-890-3243

Taehumes@aol.com

<u>ATTACHED EXHIBIT LIST</u>

    A.    Mrs. Buckner Equifax Consumer Disclosure, July 23, 2025.
    B.    FTC Opinion Letter.
    C.    CFPB on 15 U.S.C. § 1681g(a)(1) January of 2024.



Credit Report

Date: July 23, 2025
Confirmation # 5204618803

Prepared for:

## LACHANTAE L BUCKNER

## *DID YOU KNOW?*

*If you find something in your report that looks like a mistake, contact us at **equifax.com/personal/disputes** or call 888-EQUIFAX (888-378-4329) to start a new dispute or check the status of your dispute.*

*There are many types of consumer reporting agencies, including credit bureaus and specialty agencies. A list can be found by accessing the CFPB's website at: **consumerfinance.gov/consumer-tools/credit-reports-and-scores/consumer-reporting-companies/companies-list***
*Looking for telecommunications, pay TV, and utility data? That information is maintained by a different company, the National Consumer Telecom and Utilities Exchange (NCTUE), and can be accessed at: **nctue.com/consumer***

Prepared for:
**LACHANTAE L BUCKNER**



Date: July 23, 2025
Confirmation # 5204618803

# An Overview of Your Credit Report

Your credit report provides different types of information, including:

### Personal Information
This section includes your name (including any former names), current and previous addresses and phone numbers, employment data, Social Security number, and birthdate. Personal information is provided by you or your lenders and creditors. While this information is not used to calculate credit scores it is important to check for typos and any unfamiliar information.

### Consumer File Notices
Notices on your credit report can include fraud and active duty alerts, security freezes or locks, and opt-outs of receiving prescreened offers of credit or insurance. You can also choose to add a consumer statement to your credit report to provide an explanation for why you missed a payment or why you believe something is being reported incorrectly. For more information on these consumer added notices **visit equifax.com/personal/help/.**

### Account Information
Your credit report can include all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit. When reviewing your account information, make sure accounts listed belong to you and look for the following:

- **Account Status:**  See if an account is open, closed, paid on time, or past due.  Closed accounts should have no money owed.
- **Payment History:**  Check if you made payments on time for each account.  Paying on time helps your credit, while late or missed payments hurt it.  Payment history is provided, where available, for each account.  To view up to 24 months of your historical payment and balance data, log in to your 'myEquifax' account at www.myequifax.com.
- **Credit Limits and Balances:**  Look at the credit limits on credit cards and compare them to what you owe.  It's better to keep the balance low compared to the limit.  This helps improve your credit.
- **Account Types:**  Notice the different kinds of credit accounts you have (like credit cards, loans, mortgages).  Having a mix of account types is good for your credit.

### Negative Information (Collections and Bankruptcy Public Records)
Be aware of any negative details such as late payments, debts that were given up on, or money owed to collections. Bankruptcies may also be shown on your credit report. These negative items can hurt your credit score. If there's something there, make sure it's correct and up to date.

### Inquiries
This section shows who accessed your credit report and when. Too many hard inquiries can negatively impact your credit score and any unfamiliar inquiries may be a sign of identity theft.

**If you find information you believe to be incorrect, you may visit us at equifax.com/personal/disputes or call us at 888-EQUIFAX (888-378-4329) to submit a dispute.**  You may also mail your dispute request to:  Equifax | PO Box 740241 | Atlanta, GA 30374

Note:  When you provide documents to Equifax as part of your dispute, including a letter, the documents may be submitted to one or more companies whose information are the subject of your dispute.

Prepared for:

## LACHANTAE L BUCKNER

**EQUIFAX**

Date: July 23, 2025
Confirmation # 5204618803

# Your Credit Report

## Summary

A quick view of key information contained in your Equifax Credit Report.

| | |
|---|---|
| **Report Date** | July 23, 2025 |
| **Average Account Age** | 11 Years, 7 Months |
| **Length of Credit History** | 24 Years, 4 Months |
| **Oldest Account** | Bank of America \| March 2001 |
| **Most Recent Account** | CAPITAL AREA SCHOOL ECU \| June 2023 |

# Personal Information

Creditors use your personal information to identify you. This information has **no impact** on your credit score.

### LACHANTAE L BUCKNER

48251 WHITNEY CT, CANTON, MI 48187
Social Security Number: **XXX-XX-0118**
Date of Birth: **06/11/1982**

**Former Name(s):**
LACHANTAE HUMES

**Employment Information:**
None

**Consumer File Notices:**
Opted-Out of Prescreened Offers

**Former Address(es):**
1993 TRINITY RD, CANTON, MI 48187
197 OAK RIDGE DR, PONTIAC, MI 48341
20042 CONLEY ST, DETROIT, MI 48234

**Former Phone Number(s):**
(734) 259-0101
(248) 874-1236

**Consumer Statement:**
No Statement on file.

LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

# Credit Accounts

This includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit.

 **MACYS/CITIBANK NA**

PO BOX 6789, SIOUX FALLS, SD  571176789 | (800) 243-6552
Account Number: **\*0804** | Owner: **Individual Account**
Loan/Account Type: **Charge Account** | Status: **Pays As Agreed**

Date Reported: **07/07/2025** | Balance: **$81**
Credit Limit: **$3,600** | High Credit: **$2,476**

| | |
|---|---|
| Date Opened: **05/01/2001** | Date of 1st Delinquency: |
| Date of Last Activity: **07/07/2025** | Date Major Delinquency 1st Reported: - |
| Scheduled Payment Amount: **$29** | Amount Past Due: - |
| Actual Payment Amount: - | Charge Off Amount: - |
| Date of Last Payment: **05/30/2025** | Date Closed: - |
| Term Duration: - | Activity Designator: - |

Terms Frequency: **Monthly**
Months Reviewed: **99**
Deferred Payment Start Date: -
Balloon Payment Amount: -
Balloon Payment Date: -
Narrative Code(s): **229**

## Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | | | | | | | | | | | | |
| 2024 | | | | | | | | | | | | |
| 2023 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2019 | | | | | | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Paid on Time | | 30 Days Past Due | | 60 Days Past Due | | 90 Days Past Due | | 120 Days Past Due |
| | 150 Days Past Due | | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | | No Data Available |

## 24 Month History

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 06/25 | $36 | $29 | - | 05/30/2025 | - | $2,476 | $3,600 | 229, 233 |
| 05/25 | $583 | $29 | - | 04/08/2025 | - | $2,476 | $3,600 | 229, 233 |
| 04/25 | $126 | $29 | - | 03/14/2025 | - | $2,476 | $3,600 | 229, 233 |
| 03/25 | $49 | $29 | - | 01/29/2025 | - | $2,476 | $3,600 | 229, 233 |
| 02/25 | $70 | $29 | - | 01/29/2025 | - | $2,476 | $3,600 | 229, 233 |
| 01/25 | $363 | $29 | - | 11/23/2024 | - | $2,476 | $3,600 | 229, 233 |
| 12/24 | $0 | | - | 11/23/2024 | - | $2,476 | $3,600 | 229, 233 |
| 11/24 | $2,476 | $29 | - | 09/19/2024 | - | $2,476 | $3,600 | 229, 233 |
| 10/24 | $0 | - | - | 09/19/2024 | - | $1,994 | $3,600 | 229, 233 |
| 09/24 | $54 | $29 | - | 08/24/2024 | - | $1,994 | $3,600 | 229, 233 |
| 08/24 | $152 | $29 | - | 08/01/2024 | - | $1,994 | $3,600 | 229, 233 |
| 07/24 | $581 | $29 | - | 06/19/2024 | - | $1,994 | $3,600 | 229, 233 |
| 06/24 | $418 | $29 | - | 05/25/2024 | - | $1,994 | $3,600 | 229, 233 |
| 05/24 | $190 | $29 | - | 04/11/2024 | - | $1,994 | $3,600 | 229, 233 |
| 04/24 | $527 | $29 | - | 03/26/2024 | - | $1,994 | $3,600 | 229, 233 |
| 03/24 | $464 | $29 | - | 02/13/2024 | - | $1,994 | $3,600 | 229, 233 |
| 02/24 | $584 | $29 | - | 01/17/2024 | - | $1,994 | $3,600 | 229, 233 |
| 01/24 | $442 | $29 | - | 12/16/2023 | - | $1,994 | $3,600 | 229, 233 |
| 12/23 | $607 | $29 | - | 11/08/2023 | - | $1,994 | $3,600 | 229, 233 |
| 11/23 | $24 | $24 | - | 10/14/2023 | - | $1,994 | $2,700 | 229, 233 |
| 10/23 | $33 | $29 | - | 08/10/2023 | - | $1,994 | $2,700 | 229, 233 |
| 09/23 | $0 | - | - | 08/10/2023 | - | $1,994 | $2,700 | 229, 233 |
| 08/23 | $9 | $9 | - | 08/02/2023 | - | $1,994 | $2,700 | 229, 233 |
| 07/23 | $483 | $29 | - | 06/16/2023 | - | $1,994 | $2,700 | 229, 233 |

| Narrative Code | Narrative Code Description |
|---|---|
| 229 | Charge |
| 233 | Amount in High Credit Column is Credit Limit |

Prepared for:

# LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

 **Bank of America - Closed**

PO Box 982238, El Paso, TX  799982238 | (800) 421-2110
Account Number: **\*6532** | Owner: **Individual Account**
Loan/Account Type: **Credit Card** | Status: **Charge Off**

Date Reported: **07/13/2025** | Balance: **$27,173**
Credit Limit: **$24,200** | High Credit: **$27,173**

| | | |
|---|---|---|
| Date Opened: **03/13/2001** | Date of 1st Delinquency: **05/11/2024** | Terms Frequency: **Monthly** |
| Date of Last Activity: ▪ | Date Major Delinquency 1st Reported: ▪ | Months Reviewed: **99** |
| Scheduled Payment Amount: ▪ | Amount Past Due: **$27,173** | Deferred Payment Start Date: ▪ |
| Actual Payment Amount: ▪ | Charge Off Amount: **$27,173** | Balloon Payment Amount: ▪ |
| Date of Last Payment: **03/25/2024** | Date Closed: **09/11/2024** | Balloon Payment Date: ▪ |
| Term Duration: ▪ | Activity Designator: **Closed** | Narrative Code(s): **067, 065, 002** |

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2025 | CO | CO | CO | CO | CO | CO | ▪ | | | | | |
| 2024 | | | | | | | | | | | CO | CO |
| 2023 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |
| 2020 | | ▪ | | | | | | | | | | |
| 2019 | | | | | | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| ▪ | Paid on Time | | 30 Days Past Due | | 60 Days Past Due | 90 Days Past Due | | 120 Days Past Due |
| 150 | 150 Days Past Due | | 180 Days Past Due | V | Voluntary Surrender | F Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|------|---------|-----------|-----------|-----------|---------|-----------|-----------|-----------------|
| 06/25 | ▪ | ▪ | ▪ | 03/25/2024 | ▪ | $27,173 | $24,200 | 022 |
| 05/25 | ▪ | ▪ | ▪ | 03/25/2024 | ▪ | $27,173 | $24,200 | 067, 065, 002, 233 |
| 04/25 | $27,173 | ▪ | ▪ | 03/25/2024 | $27,173 | $27,173 | $24,200 | 067, 065, 002, 233 |
| 03/25 | $27,173 | ▪ | ▪ | 03/25/2024 | $27,173 | $27,173 | $24,200 | 067, 065, 002, 233 |
| 02/25 | $27,173 | ▪ | ▪ | 03/25/2024 | $27,173 | $27,173 | $24,200 | 067, 065, 002, 233 |
| 01/25 | $27,173 | ▪ | ▪ | 03/25/2024 | $27,173 | $27,173 | $24,200 | 067, 065, 002, 233 |
| 12/24 | $27,173 | ▪ | ▪ | 03/25/2024 | $27,173 | $27,173 | $24,200 | 067, 065, 002, 233 |
| 11/24 | $27,173 | ▪ | ▪ | 03/25/2024 | $27,173 | $27,173 | $24,200 | 067, 065, 002, 233 |
| 10/24 | $27,173 | $753 | ▪ | 03/25/2024 | $4,920 | $27,173 | $24,200 | 065, 002, 233, 264 |
| 09/24 | $26,686 | $804 | ▪ | 03/25/2024 | $4,116 | $26,686 | $24,200 | 065, 002, 233, 263 |
| 08/24 | $26,143 | $788 | ▪ | 03/25/2024 | $3,328 | $26,143 | $24,200 | 002, 233, 262 |
| 07/24 | $25,610 | $758 | ▪ | 03/25/2024 | $2,570 | $25,610 | $24,200 | 002, 233 |
| 06/24 | $25,103 | $759 | ▪ | 03/25/2024 | $1,811 | $25,103 | $24,200 | 002, 233 |
| 05/24 | $24,590 | $729 | ▪ | 03/25/2024 | $1,082 | $24,703 | $24,200 | 002, 233 |
| 04/24 | $24,101 | $721 | ▪ | 03/25/2024 | ▪ | $24,703 | $24,200 | 002, 233 |
| 03/24 | $23,844 | $661 | ▪ | 03/01/2024 | ▪ | $24,703 | $24,200 | 002, 233 |
| 02/24 | $24,035 | $691 | ▪ | 01/18/2024 | ▪ | $24,703 | $24,200 | 002, 233 |
| 01/24 | $24,213 | $698 | ▪ | 12/29/2023 | ▪ | $24,703 | $24,200 | 002, 233 |
| 12/23 | $24,152 | $680 | ▪ | 11/29/2023 | ▪ | $24,703 | $24,200 | 002, 233 |
| 11/23 | $24,028 | $692 | ▪ | 10/28/2023 | ▪ | $24,703 | $24,200 | 002, 233 |
| 10/23 | $24,104 | $677 | ▪ | 09/30/2023 | ▪ | $24,703 | $24,200 | 002, 233 |
| 09/23 | $23,861 | $691 | ▪ | 09/01/2023 | ▪ | $24,703 | $24,200 | 002, 233 |
| 08/23 | $23,985 | $693 | ▪ | 07/29/2023 | ▪ | $24,703 | $24,200 | 002, 233 |
| 07/23 | $23,900 | $670 | ▪ | 06/30/2023 | ▪ | $24,703 | $24,200 | 002, 233 |

| Narrative Code | Narrative Code Description |
|----------------|---------------------------|
| **067** | Charged Off Account |
| **065** | Account Closed By Credit Grantor |
| **002** | Credit Card |
| **022** | Consumer Disputes - Reinvestigation in Process |
| **233** | Amount in High Credit Column is Credit Limit |
| **264** | 180 Days or More Past Due |
| **263** | 150 Days Past Due |
| **262** | 120 Days Past Due |

Prepared for:

# LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

 **BEST BUY/CBNA**

5800 SOUTH CORPORATE PLACE, SIOUX FALLS, SD  57108 | (800) 950-5114
Account Number: **\*1506** | Owner: **Individual Account**
Loan/Account Type: **Charge Account** | Status: **Pays As Agreed**

Date Reported: **06/26/2025** | Balance: **$1,628**
Credit Limit: **$10,000** | High Credit: **$7,540**

| | | |
|---|---|---|
| Date Opened: **12/31/2015** | Date of 1st Delinquency: ▪ | Terms Frequency: **Monthly** |
| Date of Last Activity: **06/26/2025** | Date Major Delinquency 1st Reported: ▪ | Months Reviewed: **99** |
| Scheduled Payment Amount: **$29** | Amount Past Due: ▪ | Deferred Payment Start Date: ▪ |
| Actual Payment Amount: ▪ | Charge Off Amount: ▪ | Balloon Payment Amount: ▪ |
| Date of Last Payment: **06/14/2025** | Date Closed: ▪ | Balloon Payment Date: ▪ |
| Term Duration: ▪ | Activity Designator: ▪ | Narrative Code(s): **229** |

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | ✓ | ✓ | ✓ | ✓ | ✓ | ▪ | ▪ | | | | | |
| 2024 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2023 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2022 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2019 | ▪ | ▪ | ▪ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

| | | | | | |
|---|---|---|---|---|---|
| ✓ Paid on Time | ⠂⠂ 30 Days Past Due | ⠄⠄ 60 Days Past Due | ⠅⠅ 90 Days Past Due | ⠂⠂ 120 Days Past Due |
| ⠄⠄⠂ 150 Days Past Due | ⠂⠄⠂ 180 Days Past Due | V Voluntary Surrender | F Foreclosure | C Collection Account |
| CO Charge Off | B Included in Bankruptcy | R Repossession | TN Too New to Rate | ▪ No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 05/25 | $1,730 | $29 | ▪ | 05/09/2025 | ▪ | $7,540 | $10,000 | 229, 233 |
| 04/25 | $714 | $29 | ▪ | 04/08/2025 | ▪ | $7,540 | $10,000 | 229, 233 |
| 03/25 | $739 | $29 | ▪ | 03/08/2025 | ▪ | $7,540 | $10,000 | 229, 233 |
| 02/25 | $1,016 | $29 | ▪ | 02/08/2025 | ▪ | $7,540 | $10,000 | 229, 233 |
| 01/25 | $1,294 | $29 | ▪ | 01/14/2025 | ▪ | $7,540 | $10,000 | 229, 233 |
| 12/24 | $1,584 | $29 | ▪ | 12/14/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 11/24 | $1,904 | $29 | ▪ | 11/16/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 10/24 | $1,933 | $29 | ▪ | 10/05/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 09/24 | $2,333 | $29 | ▪ | 09/07/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 08/24 | $2,733 | $29 | ▪ | 08/10/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 07/24 | $3,133 | $32 | ▪ | 07/13/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 06/24 | $3,433 | $35 | ▪ | 06/15/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 05/24 | $3,508 | $36 | ▪ | 05/18/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 04/24 | $3,908 | $40 | ▪ | 04/09/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 03/24 | $4,308 | $44 | ▪ | 03/09/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 02/24 | $4,433 | $45 | ▪ | 02/08/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 01/24 | $4,533 | $46 | ▪ | 01/17/2024 | ▪ | $7,540 | $10,000 | 229, 233 |
| 12/23 | $4,493 | $45 | ▪ | 12/16/2023 | ▪ | $7,540 | $10,000 | 229, 233 |
| 11/23 | $4,491 | $45 | ▪ | 11/14/2023 | ▪ | $7,540 | $10,000 | 229, 233 |
| 10/23 | $4,343 | $43 | ▪ | 10/19/2023 | ▪ | $7,540 | $10,000 | 229, 233 |
| 09/23 | $5,643 | $56 | ▪ | 09/02/2023 | ▪ | $7,540 | $10,000 | 229, 233 |
| 08/23 | $5,148 | $51 | ▪ | 08/02/2023 | ▪ | $7,540 | $10,000 | 229, 233 |
| 07/23 | $5,390 | $54 | ▪ | 07/15/2023 | ▪ | $7,540 | $10,000 | 229, 233 |

| Narrative Code | Narrative Code Description |
|---|---|
| 229 | Charge |
| 233 | Amount in High Credit Column is Credit Limit |

Prepared for:

# LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803



## JPMCB CARD SERVICES - Closed

PO Box 15298, Wilmington, DE  198505298 | (800) 432-3117
Account Number: **\*7972** | Owner: **Individual Account**
Loan/Account Type: **Flexible Spending Credit Card** | Status: **Charge Off**

Date Reported: **07/11/2025** | Balance: **$32,075**
Credit Limit: **$28,400** | High Credit: **$32,075**

| | | | |
|---|---|---|---|
| Date Opened: **01/11/2017** | Date of 1st Delinquency: **05/06/2024** | Terms Frequency: **Monthly** | |
| Date of Last Activity: ▪ | Date Major Delinquency 1st Reported: ▪ | Months Reviewed: **99** | |
| Scheduled Payment Amount: ▪ | Amount Past Due: **$32,075** | Deferred Payment Start Date: ▪ | |
| Actual Payment Amount: ▪ | Charge Off Amount: **$32,075** | Balloon Payment Amount: ▪ | |
| Date of Last Payment: **04/01/2024** | Date Closed: **07/01/2024** | Balloon Payment Date: ▪ | |
| Term Duration: ▪ | Activity Designator: **Closed** | Narrative Code(s): **067, 065, 275** | |

### Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | CO | CO | CO | CO | CO | CO | ▪ | ▪ | ▪ | ▪ | | |
| 2024 | · | · | · | · | 30 | 60 | 90 | 120 | 150 | 150 | CO | CO |
| 2023 | · | · | · | · | · | · | · | · | · | · | · | · |
| 2022 | · | · | · | · | · | · | · | · | · | · | · | · |
| 2021 | · | · | · | · | · | · | · | · | · | · | · | · |
| 2020 | · | · | · | · | · | · | · | · | · | · | · | · |
| 2019 | · | · | · | · | · | · | · | · | · | · | · | · |
| 2018 | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ |

| | | | | | | |
|---|---|---|---|---|---|---|
| · | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ▪ | No Data Available |

### 24 Month History

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 06/25 | $32,075 | ▪ | ▪ | 04/24/2024 | $32,075 | $32,075 | $28,400 | 022 |
| 05/25 | $32,075 | ▪ | ▪ | 04/24/2024 | $32,075 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 04/25 | $32,075 | ▪ | ▪ | 04/24/2024 | $32,075 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 03/25 | $32,075 | ▪ | ▪ | 04/24/2024 | $32,075 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 02/25 | $32,075 | ▪ | ▪ | 04/24/2024 | $32,075 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 01/25 | $32,075 | ▪ | ▪ | 04/24/2024 | $32,075 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 12/24 | $32,075 | ▪ | ▪ | 04/24/2024 | $6,970 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 11/24 | $32,075 | ▪ | ▪ | 04/24/2024 | $6,004 | $32,075 | $28,400 | 067, 065, 275, 233 |
| 10/24 | $32,075 | $966 | ▪ | 04/24/2024 | $4,985 | $32,075 | $28,400 | 065, 275, 233, 264 |
| 09/24 | $31,430 | $1,019 | ▪ | 04/24/2024 | $3,988 | $31,430 | $28,400 | 065, 275, 233, 263 |
| 08/24 | $30,724 | $997 | ▪ | 04/24/2024 | $3,032 | $30,724 | $28,400 | 065, 275, 233, 262 |
| 07/24 | $30,034 | $956 | ▪ | 04/24/2024 | $2,077 | $30,034 | $28,400 | 275, 233 |
| 06/24 | $29,378 | $955 | ▪ | 04/24/2024 | $1,159 | $29,378 | $28,400 | 275, 233 |
| 05/24 | $28,716 | $918 | ▪ | 04/24/2024 | $242 | $28,809 | $28,400 | 275, 233 |
| 04/24 | $28,285 | $917 | ▪ | 04/01/2024 | ▪ | $28,809 | $28,400 | 275, 233 |
| 03/24 | $27,903 | $842 | ▪ | 02/27/2024 | ▪ | $28,809 | $28,400 | 275, 233 |
| 02/24 | $28,092 | $884 | ▪ | 02/01/2024 | ▪ | $28,809 | $28,400 | 275, 233 |
| 01/24 | $27,913 | $882 | ▪ | 12/29/2023 | ▪ | $28,809 | $28,400 | 275, 233 |
| 12/23 | $28,078 | $865 | ▪ | 12/01/2023 | ▪ | $28,809 | $28,400 | 275, 233 |
| 11/23 | $27,597 | $874 | ▪ | 10/31/2023 | ▪ | $28,809 | $28,400 | 275, 233 |
| 10/23 | $27,862 | $864 | ▪ | 09/29/2023 | ▪ | $28,809 | $28,400 | 275, 233 |
| 09/23 | $28,134 | $892 | ▪ | 09/01/2023 | ▪ | $28,809 | $28,400 | 275, 233 |
| 08/23 | $28,379 | $892 | ▪ | 07/24/2023 | ▪ | $28,809 | $28,400 | 275, 233 |
| 07/23 | $28,356 | $868 | ▪ | 07/03/2023 | ▪ | $28,809 | $28,400 | 275, 233 |

| Narrative Code | Narrative Code Description |
|---|---|
| 067 | Charged Off Account |
| 065 | Account Closed By Credit Grantor |
| 275 | Flexible Spending Credit Card |
| 022 | Consumer Disputes - Reinvestigation in Process |
| 233 | Amount in High Credit Column is Credit Limit |
| 264 | 180 Days or More Past Due |
| 263 | 150 Days Past Due |
| 262 | 120 Days Past Due |

Prepared for:

# LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803



### JPMCB - HOME LENDING

700 KANSAS LANE,, MC: LA4-6945, MONROE, LA  71203 | (800) 848-9136
Account Number: **5534** | Owner: **Individual Account**
Loan/Account Type: **Conventional Re Mortgage** | Status: **Pays As Agreed**

Date Reported: **07/05/2025** | Balance: **$281,249**
Credit Limit: **▪** | High Credit: **$316,000**

| | | | |
|---|---|---|---|
| Date Opened: **01/10/2020** | Date of 1st Delinquency: **▪** | Terms Frequency: **Monthly** | |
| Date of Last Activity: **07/05/2025** | Date Major Delinquency 1st Reported: **▪** | Months Reviewed: **65** | |
| Scheduled Payment Amount: **$2,458** | Amount Past Due: **▪** | Deferred Payment Start Date: **▪** | |
| Actual Payment Amount: **$2,458** | Charge Off Amount: **▪** | Balloon Payment Amount: **▪** | |
| Date of Last Payment: **06/27/2025** | Date Closed: **▪** | Balloon Payment Date: **▪** | |
| Term Duration: **30 Years** | Activity Designator: **▪** | Narrative Code(s): **127, 152** | |

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | | | | | ✓ | ✓ | ▪ | ▪ | ▪ | | | |
| 2024 | | | | | | ✓ | | | | | | |
| 2023 | | | | | | ✓ | | | | | | |
| 2022 | | | | | | ✓ | | | | | | |
| 2021 | | | | | | ✓ | | | | | | |
| 2020 | ▪ | ▪ | | | | ✓ | | | ✓ | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Paid on Time | | 30 Days Past Due | | 60 Days Past Due | |
| | 150 Days Past Due | | 180 Days Past Due | V | Voluntary Surrender | F |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN |

| | | | |
|---|---|---|---|
| | 90 Days Past Due | | 120 Days Past Due |
| | Foreclosure | C | Collection Account |
| | Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 06/25 | $281,832 | $2,458 | $2,458 | 05/30/2025 | ▪ | $316,000 | ▪ | 127, 152 |
| 05/25 | $282,413 | $2,458 | $2,458 | 04/18/2025 | ▪ | $316,000 | ▪ | 127, 152 |
| 04/25 | $282,992 | $2,458 | $2,458 | 03/21/2025 | ▪ | $316,000 | ▪ | 127, 152 |
| 03/25 | $283,569 | $2,458 | $2,508 | 02/26/2025 | ▪ | $316,000 | ▪ | 127, 152 |
| 02/25 | $284,145 | $2,465 | $2,465 | 01/27/2025 | ▪ | $316,000 | ▪ | 127, 152 |
| 01/25 | $284,718 | $2,465 | $2,465 | 12/28/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 12/24 | $285,290 | $2,465 | $2,465 | 11/28/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 11/24 | $285,860 | $2,465 | $2,465 | 11/01/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 09/24 | $286,995 | $2,465 | $2,334 | 08/23/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 08/24 | $287,560 | $2,334 | $2,334 | 07/26/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 07/24 | $288,123 | $2,334 | $2,334 | 06/28/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 06/24 | $288,685 | $2,334 | $2,334 | 05/31/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 05/24 | $289,244 | $2,334 | $2,434 | 04/20/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 04/24 | $289,802 | $2,334 | $2,334 | 03/24/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 03/24 | $290,358 | $2,334 | $2,334 | 02/23/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 02/24 | $290,912 | $2,334 | $3,373 | 01/30/2024 | ▪ | $316,000 | ▪ | 127, 152 |
| 01/24 | $291,702 | $2,373 | $2,373 | 12/29/2023 | ▪ | $316,000 | ▪ | 127, 152 |
| 12/23 | $292,016 | $2,373 | $2,373 | 11/30/2023 | ▪ | $316,000 | ▪ | 127, 152 |
| 11/23 | $292,565 | $2,373 | $2,373 | 10/31/2023 | ▪ | $316,000 | ▪ | 127, 152 |
| 10/23 | $293,113 | $2,373 | $2,373 | 09/29/2023 | ▪ | $316,000 | ▪ | 127, 152 |
| 09/23 | $293,658 | $2,373 | $2,441 | 08/31/2023 | ▪ | $316,000 | ▪ | 127, 152 |
| 08/23 | $294,202 | $2,441 | $2,441 | 07/31/2023 | ▪ | $316,000 | ▪ | 127, 152 |
| 07/23 | $294,745 | $2,441 | $2,441 | 06/30/2023 | ▪ | $316,000 | ▪ | 127, 152 |

| Narrative Code | Narrative Code Description |
|---|---|
| 127 | Real Estate Mortgage |
| 152 | Conventional Mortgage |

Prepared for:

# LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

---

 **CAPITAL AREA SCHOOL ECU**

4316 S Pennsylvania Ave, Lansing, MI  489105608 | (517) 393-7710
Account Number: **\*7103** | Owner: **Joint Account**
Loan/Account Type: **Auto** | Status: **Pays As Agreed**

Date Reported: **06/30/2025** | Balance: **$13,149**
Credit Limit: ▪ | High Credit: **$18,000**

| | | |
|---|---|---|
| Date Opened: **06/28/2023** | Date of 1st Delinquency: ▪ | Terms Frequency: **Monthly** |
| Date of Last Activity: **06/30/2025** | Date Major Delinquency 1st Reported: ▪ | Months Reviewed: **24** |
| Scheduled Payment Amount: **$313** | Amount Past Due: ▪ | Deferred Payment Start Date: ▪ |
| Actual Payment Amount: ▪ | Charge Off Amount: ▪ | Balloon Payment Amount: ▪ |
| Date of Last Payment: **05/29/2025** | Date Closed: ▪ | Balloon Payment Date: ▪ |
| Term Duration: **72 Months** | Activity Designator: ▪ | Narrative Code(s): **214, 132** |

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | . | . | . | . | . | ▪ | ▪ | ▪ | . | . | ▪ | . |
| 2024 | ▪ | . | . | . | . | . | . | . | . | . | . | . |
| 2023 | | | | | | | | . | . | . | . | . |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| . | Paid on Time | ▪ | 30 Days Past Due | ▪ | 60 Days Past Due | ▪ | 90 Days Past Due | 120 Days Past Due |
| | 150 Days Past Due | | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 05/25 | $13,149 | $313 | $313 | 05/29/2025 | ▪ | $18,000 | ▪ | 214, 132 |
| 04/25 | $13,358 | $313 | $313 | 04/22/2025 | ▪ | $18,000 | ▪ | 214, 132 |
| 03/25 | $13,589 | $313 | $313 | 03/24/2025 | ▪ | $18,000 | ▪ | 214, 132 |
| 02/25 | $13,824 | $313 | $313 | 02/25/2025 | ▪ | $18,000 | ▪ | 214, 132 |
| 01/25 | $14,054 | $313 | $313 | 01/28/2025 | ▪ | $18,000 | ▪ | 214, 132 |
| 12/24 | $14,283 | $313 | $626 | 12/31/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 11/24 | $14,725 | $313 | $313 | 11/01/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 10/24 | $14,929 | $313 | ▪ | 09/27/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 09/24 | $14,929 | $313 | $313 | 09/27/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 08/24 | $15,150 | $313 | $313 | 08/29/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 07/24 | $15,363 | $313 | $626 | 07/29/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 06/24 | $15,785 | $313 | ▪ | 05/28/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 05/24 | $15,785 | $313 | $313 | 05/28/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 04/24 | $15,988 | $313 | $501 | 04/25/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 03/24 | $16,350 | $313 | $125 | 03/20/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 02/24 | $16,406 | $313 | $313 | 02/29/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 01/24 | $16,611 | $313 | $313 | 01/29/2024 | ▪ | $18,000 | ▪ | 214, 132 |
| 12/23 | $16,811 | $313 | $313 | 12/28/2023 | ▪ | $18,000 | ▪ | 214, 132 |
| 11/23 | $17,017 | $313 | $313 | 11/28/2023 | ▪ | $18,000 | ▪ | 214, 132 |
| 10/23 | $17,229 | $313 | $313 | 10/31/2023 | ▪ | $18,000 | ▪ | 214, 132 |
| 09/23 | $17,421 | $313 | $626 | 09/28/2023 | ▪ | $18,000 | ▪ | 214, 132 |
| 08/23 | $17,936 | $313 | $313 | 08/29/2023 | ▪ | $18,000 | ▪ | 214, 132 |
| 07/23 | $18,000 | $313 | ▪ | ▪ | ▪ | $18,000 | ▪ | 214, 132 |

| Narrative Code | Narrative Code Description |
|---|---|
| 214 | Auto |
| 132 | Fixed Rate |

Prepared for:

**LACHANTAE L BUCKNER**



Date: July 23, 2025
Confirmation # 5204618803

 **CAPITAL AREA SCHOOL ECU - Closed**

4316 S Pennsylvania Ave, Lansing, MI 489105608 | (517) 393-7710
Account Number: **\*7102** | Owner: **Joint Account**
Loan/Account Type: **Auto** | Status: **Pays As Agreed**

Date Reported: **09/30/2024** | Balance: **$0**
Credit Limit: **-** | High Credit: **$17,000**

Date Opened: **09/21/2020**
Date of Last Activity: **09/19/2024**
Scheduled Payment Amount: **-**
Actual Payment Amount: **$368**
Date of Last Payment: **09/19/2024**
Term Duration: **48 Months**

Date of 1st Delinquency: **-**
Date Major Delinquency 1st Reported: **-**
Amount Past Due: **-**
Charge Off Amount: **-**
Date Closed: **09/19/2024**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **48**
Deferred Payment Start Date: **-**
Balloon Payment Amount: **-**
Balloon Payment Date: **-**
Narrative Code(s): **158, 214, 132**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2024 | | | | | | | | | ■ | ■ | ■ | ■ |
| 2023 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |
| 2020 | ■ | | ■ | ■ | ■ | ■ | | ■ | ■ | | | |

| | Paid on Time | | 30 Days Past Due | | 60 Days Past Due | | 90 Days Past Due | | 120 Days Past Due |
|---|---|---|---|---|---|---|---|---|---|
| | 150 Days Past Due | | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ■ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|------|---------|--------------------------|-----------------------|-------------------|-----------------|-------------|--------------|-----------------|
| 08/24 | $368 | $376 | $376 | 08/26/2024 | ■ | $17,000 | ■ | 214, 132 |
| 07/24 | $742 | $376 | $376 | 07/15/2024 | ■ | $17,000 | ■ | 214, 132 |
| 06/24 | $1,116 | $376 | $376 | 06/17/2024 | ■ | $17,000 | ■ | 214, 132 |
| 05/24 | $1,490 | $376 | $376 | 05/20/2024 | ■ | $17,000 | ■ | 214, 132 |
| 04/24 | $1,862 | $376 | $629 | 04/18/2024 | ■ | $17,000 | ■ | 214, 132 |
| 03/24 | $2,466 | $376 | $125 | 03/20/2024 | ■ | $17,000 | ■ | 214, 132 |
| 02/24 | $2,585 | $376 | $379 | 02/21/2024 | ■ | $17,000 | ■ | 214, 132 |
| 01/24 | $2,956 | $376 | $379 | 01/19/2024 | ■ | $17,000 | ■ | 214, 132 |
| 12/23 | $3,327 | $376 | $379 | 12/18/2023 | ■ | $17,000 | ■ | 214, 132 |
| 11/23 | $3,699 | $376 | $379 | 11/21/2023 | ■ | $17,000 | ■ | 214, 132 |
| 10/23 | $4,069 | $376 | $379 | 10/23/2023 | ■ | $17,000 | ■ | 214, 132 |
| 09/23 | $4,437 | $376 | $379 | 09/21/2023 | ■ | $17,000 | ■ | 214, 132 |
| 08/23 | $4,804 | $376 | $379 | 08/21/2023 | ■ | $17,000 | ■ | 214, 132 |
| 07/23 | $5,172 | $376 | $379 | 07/25/2023 | ■ | $17,000 | ■ | 214, 132 |

| **Narrative Code** | **Narrative Code Description** |
|---|---|
| **158** | Closed or Paid Account/Zero Balance |
| **214** | Auto |
| **132** | Fixed Rate |

Prepared for: 
**LACHANTAE L BUCKNER**

Date: July 23, 2025
Confirmation # 5204618803

 **BMW FINANCIAL SERVICES - Closed**

1400 CITY VIEW DRIVE, COLUMBUS, OH  43215 | (877) 269-3577
Account Number: **\*0486** | Owner: **Individual Account**
Loan/Account Type: **Auto** | Status: **Pays As Agreed**

Date Reported: **03/02/2024** | Balance: **$0**
Credit Limit: ▪ | High Credit: **$35,605**

Date Opened: **03/06/2018**
Date of Last Activity: **02/29/2024**
Scheduled Payment Amount: ▪
Actual Payment Amount: **$1,146**
Date of Last Payment: **02/29/2024**
Term Duration: **72 Months**

Date of 1st Delinquency: ▪
Date Major Delinquency 1st Reported: ▪
Amount Past Due: ▪
Charge Off Amount: ▪
Date Closed: **02/29/2024**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **71**
Deferred Payment Start Date: ▪
Balloon Payment Amount: ▪
Balloon Payment Date: ▪
Narrative Code(s): **158, 214, 132**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2024 |     |     | ▪   | ▪   |     | ▪   | ▪   |     | ▪   |     | ▪   |     |
| 2023 | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   |
| 2022 | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   |
| 2021 | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   |
| 2020 | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   |
| 2019 |     | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   | ▪   |

|  | Paid on Time |  | 30 Days Past Due |  | 60 Days Past Due |  | 90 Days Past Due |  | 120 Days Past Due |
|---|---|---|---|---|---|---|---|---|---|
|  | 150 Days Past Due |  | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 01/24 | $1,163 | $598 | $598 | 01/02/2024 | ▪ | $35,605 | ▪ | 214, 132 |
| 12/23 | $1,751 | $598 | $598 | 12/01/2023 | ▪ | $35,605 | ▪ | 214, 132 |
| 11/23 | $2,337 | $598 | $598 | 11/02/2023 | ▪ | $35,605 | ▪ | 214, 132 |
| 10/23 | $2,919 | $598 | $598 | 10/02/2023 | ▪ | $35,605 | ▪ | 214, 132 |
| 09/23 | $3,498 | $598 | $598 | 09/01/2023 | ▪ | $35,605 | ▪ | 214, 132 |
| 08/23 | $4,075 | $598 | $598 | 08/02/2023 | ▪ | $35,605 | ▪ | 214, 132 |
| 07/23 | $4,649 | $598 | $598 | 07/03/2023 | ▪ | $35,605 | ▪ | 214, 132 |

| Narrative Code | Narrative Code Description |
|---|---|
| **158** | Closed or Paid Account/Zero Balance |
| **214** | Auto |
| **132** | Fixed Rate |

Prepared for:
# LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

---

 **CAPITAL AREA SCHOOL ECU - Closed**

4316 S Pennsylvania Ave, Lansing, MI 489105608 | (517) 393-7710
Account Number: **\*7101** | Owner: **Joint Account**
Loan/Account Type: **Auto** | Status: **Pays As Agreed**

Date Reported: **10/31/2022** | Balance: **$0**
Credit Limit: **-** | High Credit: **$19,113**

Date Opened: **11/04/2017**
Date of Last Activity: **10/01/2022**
Scheduled Payment Amount: **-**
Actual Payment Amount: **$339**
Date of Last Payment: **10/01/2022**
Term Duration: **60 Months**

Date of 1st Delinquency: **-**
Date Major Delinquency 1st Reported: **-**
Amount Past Due: **-**
Charge Off Amount: **-**
Date Closed: **10/01/2022**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **59**
Deferred Payment Start Date: **-**
Balloon Payment Amount: **-**
Balloon Payment Date: **-**
Narrative Code(s): **158, 214, 132**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2022 | ✓ | | | | | | | | | ■ | ■ | ■ |
| 2021 | | | | | | | | | | | | |
| 2020 | ■ | ■ | ■ | | | | | | | | | |
| 2019 | ✓ | | | | | | | | | | ✓ | |

| | | | | | | |
|--|--|--|--|--|--|--|
| ✓ | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ■ | No Data Available |

| Narrative Code | Narrative Code Description |
|----------------|---------------------------|
| 158 | Closed or Paid Account/Zero Balance |
| 214 | Auto |
| 132 | Fixed Rate |

---

 **SYNCB/JC PENNEYS - Closed**

PO Box 71729, Philadelphia, PA 191761729 | (866) 396-8254
Account Number: **\*3710** | Owner: **Individual Account**
Loan/Account Type: **Charge Account** | Status: **Pays As Agreed**

Date Reported: **06/16/2020** | Balance: **$0**
Credit Limit: **$1,000** | High Credit: **$0**

Date Opened: **02/26/2016**
Date of Last Activity: **-**
Scheduled Payment Amount: **-**
Actual Payment Amount: **-**
Date of Last Payment: **-**
Term Duration: **-**

Date of 1st Delinquency: **-**
Date Major Delinquency 1st Reported: **-**
Amount Past Due: **-**
Charge Off Amount: **-**
Date Closed: **02/01/2020**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **52**
Deferred Payment Start Date: **-**
Balloon Payment Amount: **-**
Balloon Payment Date: **-**
Narrative Code(s): **158, 229, 293**

| Narrative Code | Narrative Code Description |
|----------------|---------------------------|
| 158 | Closed or Paid Account/Zero Balance |
| 229 | Charge |
| 293 | Account Closed Due to Inactivity |

Prepared for:
## LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

 **GREEN PLANET MORTGAGE LLC - Closed**

10 Research Pkwy Ste 2, Wallingford, CT  64921963 | (203) 265-5090
Account Number: **\*2193** | Owner: **Individual Account**
Loan/Account Type: **FHA Real Estate Mortgage** | Status: **Pays As Agreed**

Date Reported: **05/08/2020** | Balance: **$0**
Credit Limit: **-** | High Credit: **$119,522**

Date Opened: **11/24/2009**
Date of Last Activity: **04/01/2020**
Scheduled Payment Amount: **-**
Actual Payment Amount: **$96,462**
Date of Last Payment: **04/01/2020**
Term Duration: **30 Years**

Date of 1st Delinquency: **-**
Date Major Delinquency 1st Reported: **-**
Amount Past Due: **-**
Charge Off Amount: **-**
Date Closed: **04/01/2020**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: 51
Deferred Payment Start Date: **-**
Balloon Payment Amount: **-**
Balloon Payment Date: **-**
Narrative Code(s): **158, 127, 132**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2020 | | ✓ | | | ■ | | ■ | | | | | |
| 2019 | | | | | | ■ | | | ■ | | ■ | ■ |

| | Paid on Time | | 30 Days Past Due | | 60 Days Past Due | | 90 Days Past Due | | 120 Days Past Due |
|---|---|---|---|---|---|---|---|---|---|
| | 150 Days Past Due | | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ■ | No Data Available |

| Narrative Code | Narrative Code Description |
|---|---|
| 158 | Closed or Paid Account/Zero Balance |
| 127 | Real Estate Mortgage |
| 132 | Fixed Rate |

 **GMFNANCIAL - Closed**

PO Box 181145, Arlington, TX  760961145 | (800) 429-5512
Account Number: **\*4264** | Owner: **Individual Account**
Loan/Account Type: **Auto Lease** | Status: **Pays As Agreed**

Date Reported: **05/31/2019** | Balance: **$0**
Credit Limit: **-** | High Credit: **$5,324**

Date Opened: **03/09/2016**
Date of Last Activity: **05/01/2018**
Scheduled Payment Amount: **-**
Actual Payment Amount: **-**
Date of Last Payment: **05/01/2018**
Term Duration: **24 Months**

Date of 1st Delinquency: **-**
Date Major Delinquency 1st Reported: **-**
Amount Past Due: **-**
Charge Off Amount: **-**
Date Closed: **03/01/2018**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **38**
Deferred Payment Start Date: **-**
Balloon Payment Amount: **-**
Balloon Payment Date: **-**
Narrative Code(s): **158**

| Narrative Code | Narrative Code Description |
|---|---|
| 158 | Closed or Paid Account/Zero Balance |

Prepared for:

## LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

---

 **SYNCB/HOME DESIGN - Closed**

PO Box 71757, Philadelphia, PA  191761757 | (866) 396-8254
Account Number: **9415** | Owner: **Individual Account**
Loan/Account Type: **Charge Account** | Status: **Pays As Agreed**

Date Reported: **09/16/2016** | Balance: **$0**
Credit Limit: **$6,000** | High Credit: **$821**

| | | |
|---|---|---|
| Date Opened: **07/26/2007** | Date of 1st Delinquency: **-** | Terms Frequency: **Monthly** |
| Date of Last Activity: **03/01/2008** | Date Major Delinquency 1st Reported: **-** | Months Reviewed: **99** |
| Scheduled Payment Amount: **-** | Amount Past Due: **-** | Deferred Payment Start Date: **-** |
| Actual Payment Amount: **-** | Charge Off Amount: **-** | Balloon Payment Amount: **-** |
| Date of Last Payment: **03/01/2008** | Date Closed: **06/01/2011** | Balloon Payment Date: **-** |
| Term Duration: **-** | Activity Designator: **Paid and Closed** | Narrative Code(s): **158** |

| Narrative Code | Narrative Code Description |
|---|---|
| 158 | Closed or Paid Account/Zero Balance |

---

 **KIA MOTORS FINANCE COMPANY - Closed**

10550 Talbert Ave, Fountain Valley, CA  927086031 | (714) 965-4838
Account Number: **2480** | Owner: **Individual Account**
Loan/Account Type: **Auto Lease** | Status: **Pays As Agreed**

Date Reported: **03/31/2016** | Balance: **$0**
Credit Limit: **-** | High Credit: **$14,027**

| | | |
|---|---|---|
| Date Opened: **12/17/2012** | Date of 1st Delinquency: **-** | Terms Frequency: **Monthly** |
| Date of Last Activity: **02/01/2016** | Date Major Delinquency 1st Reported: **-** | Months Reviewed: **39** |
| Scheduled Payment Amount: **-** | Amount Past Due: **-** | Deferred Payment Start Date: **-** |
| Actual Payment Amount: **-** | Charge Off Amount: **-** | Balloon Payment Amount: **-** |
| Date of Last Payment: **02/01/2016** | Date Closed: **-** | Balloon Payment Date: **-** |
| Term Duration: **39 Months** | Activity Designator: **Paid and Closed** | Narrative Code(s): **158** |

| Narrative Code | Narrative Code Description |
|---|---|
| 158 | Closed or Paid Account/Zero Balance |

---

 **FLAGSTAR BANK - Closed**

5151 Corporate Dr, Troy, MI  480982639 | (800) 945-7700
Account Number: **2193** | Owner: **Individual Account**
Loan/Account Type: **FHA Real Estate Mortgage** | Status: **Pays As Agreed**

Date Reported: **03/01/2016** | Balance: **$0**
Credit Limit: **-** | High Credit: **$119,522**

| | | |
|---|---|---|
| Date Opened: **11/24/2009** | Date of 1st Delinquency: **-** | Terms Frequency: **Monthly** |
| Date of Last Activity: **01/01/2016** | Date Major Delinquency 1st Reported: **-** | Months Reviewed: **76** |
| Scheduled Payment Amount: **-** | Amount Past Due: **-** | Deferred Payment Start Date: **-** |
| Actual Payment Amount: **-** | Charge Off Amount: **-** | Balloon Payment Amount: **-** |
| Date of Last Payment: **01/01/2016** | Date Closed: **02/01/2016** | Balloon Payment Date: **-** |
| Term Duration: **30 Years** | Activity Designator: **Transfer/Sold** | Narrative Code(s): **123** |

| Narrative Code | Narrative Code Description |
|---|---|
| 123 | Account Transferred or Sold |

---

Prepared for:

**LACHANTAE L BUCKNER**

**EQUIFAX**

Date: July 23, 2025
Confirmation # 5204618803

# Inquiries

A request for your credit history is called an inquiry. There are two types of inquiries - those that may impact your credit rating/score and those that do not.  They may remain on your file for up to 2 years.

- **Hard Inquiries that can impact your credit rating/score.** When a lender requests to review your credit reports after you've underlined applied for credit, it results in a hard inquiry which may impact your credit score.
- **Soft Inquiries that do not impact your credit rating/score.** These are inquiries, for example, from companies making promotional offers of credit, periodic account reviews by an existing creditor, or your own requests to check your credit file.

| Company Information | Inquiry Type | Inquiry Date(s) |
|---|---|---|
| **EQUIFAX INC (0100)**<br>*1550 PEACHTREE ST NW ATLANTA GA 303092468*<br>*Phone: (404) 885-8000* | Soft | 07/23/2025 |
| **CAPITAL ONE**<br>*15000 CAPITAL ONE DR HENRICO VA 232381119*<br>*Phone: (800) 955-7070* | Soft | 10/20/2024 |
| **EQUIFAX**<br>*PO BOX 740250 ATLANTA GA 30374-0250*<br>*Phone: (678) 795-7622* | Soft | 07/23/2025, 05/25/2025 |
| **EQUIFAX INFO SVCS.**<br>*PO Box 740241 Atlanta GA 303740241*<br>*Phone: (800) 685-1111* | Soft | 07/11/2025, 06/30/2025 |
| **MACYS/DSNB**<br>*9111 Duke Blvd Mason OH 450408999*<br>*Phone: (800) 241-0488* | Soft | 06/28/2025, 07/30/2024 |
| **BEST BUY / CBNA**<br>*PO Box 6497 Citibank Sioux Falls SD 571176497*<br>*Phone: (888) 574-1301* | Soft | 07/18/2025 |
| **EQUIFAX INFO SVCS.**<br>*PO Box 740241 Atlanta GA 303740241*<br>*Phone: (800) 685-1111* | Soft | 07/11/2025 |
| **EQUIFAX - TALX**<br>*11432 LACKLAND RD SAINT LOUIS MO 631463516*<br>*Phone: (888) 378-4329* | Soft | 07/23/2025, 05/25/2025 |

Prepared for:
## LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

    - a person has taken adverse action against you because of information in your credit report;
    - you are the victim of identity theft and place a fraud alert in your file;
    - your file contains inaccurate information as a result of fraud;
    - you are on public assistance;
    - you are unemployed but expect to apply for employment within 60 days.

    In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your creditworthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

Prepared for:
## LACHANTAE L BUCKNER



Date: July 23, 2025
Confirmation # 5204618803

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

- The following FCRA right applies with respect to nationwide consumer reporting agencies:

## CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account  upgrades and enhancements.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

Prepared for:

**LACHANTAE L BUCKNER**



Date: July 23, 2025
Confirmation # 5204618803

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br><br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street, NW<br>Washington, DC 20552<br><br>b. Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br><br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act.<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br><br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>P.O. Box 53570<br>Houston, TX 77052<br><br>b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480<br><br>c. Division of Depositor and Consumer Protection<br>National Center for Consumer and Depositor Assistance<br>Federal Deposit Insurance Corporation<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br><br>d. National Credit Union Administration<br>Office of Consumer Financial Protection<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Assistant General Counsel for Office of Aviation Consumer Protection<br>Department of Transportation<br>1200 New Jersey Avenue SE<br>Washington, DC 20590 |
| 4. Creditors Subject to the Surface Transportation Board | Office of Public Assistance, Governmental Affairs, and Compliance<br>Surface Transportation Board<br>395 E Street SW<br>Washington, DC 20423 |
| 5. Creditors Subject to the Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Division Regional Office |
| 6. Small Business Investment Companies | Associate Administrator, Office of Capital Access<br>United States Small Business Association<br>409 Third Street SW, Suite 8200<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Institutions that are members of the Farm Credit System | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>(877) 382-4357 |


**FEDERAL TRADE COMMISSION**

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.

Asst. General Counsel

TRANS UNION

555 West Adams Street

Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

BILLING CODE: 4810-AM-P

**CONSUMER FINANCIAL PROTECTION BUREAU**

**12 CFR Part 1022**

**Fair Credit Reporting; File Disclosure**

**AGENCY:** Consumer Financial Protection Bureau.

**ACTION:** Advisory opinion.

**SUMMARY:** The Consumer Financial Protection Bureau (CFPB or Bureau) is issuing this advisory opinion to address certain obligations that consumer reporting agencies have under section 609(a) of the Fair Credit Reporting Act (FCRA). This advisory opinion underscores that, to trigger a consumer reporting agency's file disclosure requirement under FCRA section 609(a), a consumer does not need to use specific language, such as "complete file" or "file." This advisory opinion also highlights the requirements regarding the information that must be disclosed to a consumer under FCRA section 609(a). In addition, this advisory opinion affirms that consumer reporting agencies must disclose to a consumer both the original source and any intermediary or vendor source (or sources) that provide the item of information to the consumer reporting agency under FCRA section 609(a).

**DATES:** This advisory opinion is effective on [INSERT DATE OF PUBLICATION IN THE *FEDERAL REGISTER*].

**FOR FURTHER INFORMATION CONTACT:** Amanda Quester, Alexandra Reimelt, or Ruth Van Veldhuizen, Senior Counsels, Office of Regulations at (202) 435-7700 or https://reginquiries.consumerfinance.gov. If you require this document in an alternative electronic format, please contact *CFPB_Accessibility@cfpb.gov*.

**SUPPLEMENTARY INFORMATION:** The Bureau is issuing this advisory opinion through

the procedures for its Advisory Opinions Policy.[1]  Refer to those procedures for more information.

## I. Advisory Opinion

### A.  Background

The FCRA regulates consumer reporting.[2]  Congress enacted the statute "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."[3]  One of the problems with the credit reporting industry that Congress recognized and sought to remedy with the FCRA was that a consumer "is not always given access to the information in [their] file."[4]  In light of its broad remedial and consumer protection purposes, courts have recognized that the FCRA "must be read in a liberal manner in order to effectuate the congressional intent underlying it."[5]

The FCRA also promotes transparency of the credit reporting system to consumers in many ways, including by generally requiring that consumer reporting agencies disclose to consumers all information in their file upon request.  Under section 609(a), a consumer reporting agency must, upon request, clearly and accurately disclose to the consumer "[a]ll information in

---

[1] 85 FR 77987 (Dec. 3, 2020).

[2] *See* 15 U.S.C. 1681-1681x.

[3] *Safeco Ins. Co. of Am. v. Barr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. 1681 (recognizing "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"); S. Rep. No. 91-517, at 1 (1969) (noting that purpose of the statute is, in part, to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report" and to "prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information").

[4] S. Rep. No. 91-517, at 3 (1969) (noting, as an example of this problem, that "[i]nsurance reporting firms generally do not admit to making a report on an individual and ordinarily will not reveal the contents of their file to [them]. Credit bureaus sometimes build roadblocks in the path of the consumer."). When introducing the bill that would become the FCRA, Senator Proxmire stated that "[m]any credit reporting agencies refuse to show consumers their files possibly out of fear of litigation and partly to protect its information sources." 115 Cong. Rec. 2412 (1969).

[5] *See, e.g.*, Fed. Trade Comm'n, *40 Years of Experience With the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations*, at 32 (2011); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3rd Cir. 2010); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("[The FCRA] was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. These consumer[-]oriented objectives support a liberal construction of the FCRA" (citations omitted).).

2

the consumer's file at the time of the request" and "[t]he sources of the information."[6] This requirement applies to all consumer reporting agencies.[7] Consumers are entitled to free file disclosures in many circumstances. For example, each nationwide consumer reporting agency and nationwide specialty consumer reporting agency, including any nationwide tenant screening or employment background screening company, must provide at least one free file disclosure annually.[8] Consumers also are entitled to free file disclosures in certain other circumstances, such as in connection with adverse action notices and fraud alerts.[9]

The FCRA defines a consumer's "file" as "all of the information on that consumer that is recorded and retained by a consumer reporting agency, regardless of how the information is stored."[10] Consumer reporting agencies possess files on hundreds of millions of Americans. These files typically include information about, among other things, a consumer's credit, criminal, employment, and rental histories. Consumer reporting agencies may obtain this information from multiple sources, including companies that provide information about their direct experiences with consumers and third parties who gather information from courts and

---

[6] *See* 15 U.S.C. 1681g(a). This requirement is subject to several exceptions. For example, consumer reporting agencies are not required to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer. *See* 15 U.S.C. 1681g(a)(1)(B). The Consumer Credit Reporting Reform Act of 1996 revised FCRA section 609(a) to require that consumers receive all information in the file rather than only the "nature and substance" of the information. Pub. L. 104-208, 110 Stat. 3009 (1996).

[7] *See* 15 U.S.C. 1681a(f) (defining "consumer reporting agency").

[8] *See* 15 U.S.C. 1681j; 12 CFR 1022.136 (centralized source for requesting annual file disclosures from nationwide consumer reporting agencies); 12 CFR 1022.137 (streamlined process for requesting annual file disclosures from nationwide specialty consumer reporting agencies); CFPB, *Bulletin 2012-09* (Nov. 29, 2012) (explaining FCRA's "streamlined process" requirement for consumers to obtain free annual reports from nationwide specialty consumer reporting agencies), https://www.consumerfinance.gov/compliance/supervisory-guidance/bulletin-fcra-process-requirement-consumers/.

[9] *See* 15 U.S.C. 1681j(b)-(d). In other instances, consumers may be required to pay for a file disclosure, with the fee capped by regulation. A list of consumer reporting companies is available at: https://www.consumerfinance.gov/consumer-tools/credit-reports-and-scores/consumer-reporting-companies/companies-list/.

[10] *See* 15 U.S.C. 1681a(g) (defining "file").

other sources of public records.[11] Errors by a furnisher or a third-party source can affect a consumer's file at many different consumer reporting agencies.[12] Consumer reporting agencies use the information in consumer files to produce and sell consumer reports,[13] which creditors, insurers, landlords, employers, and others who have a permissible purpose use to make eligibility and other decisions about consumers. The potential for the vast quantity of information contained in consumer files to include errors poses significant risks to accuracy, fairness, and consumer privacy in the consumer reporting system.

Section 609(a)'s file disclosure requirements are central to the statute's accuracy, fairness, and privacy purposes. Consumers have a right to see the information consumer reporting agencies keep about them in their files at any time. Absent file disclosure requirements, a consumer may not be able to review their file, determine whether it contains any incomplete or inaccurate information, and, if it does, file a dispute under FCRA sections 611 and 623, and have the information corrected or deleted.[14] Disclosure of the information in a consumer's file upon request is a critical component of the FCRA's carefully calibrated dispute provisions.[15] Moreover, file disclosure also promotes the FCRA's fairness purpose by enabling

---

[11] CFPB, Market Snapshot: Background Screening Reports: Criminal background checks in employment 5-6 (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf. *See also* Nat'l Consumer Law Ctr., *Broken Records: How Errors by Criminal Background Checking Companies Harm Workers and Business* 10-11 (2012), https://www.nclc.org/images/pdf/pr-reports/broken_records_report.pdf.

[12] *See, e.g., Clark v. Trans Union LLC*, No. 3:15cv391, 2016 WL 7197391, at *11 (E.D. Va. Dec. 9, 2016) (stating that "the failure to include LexisNexis in the report creates a material risk that LexisNexis could continue to report inaccurate information to others in the future").

[13] *See* 15 U.S.C. 1681a(d) (defining "consumer report").

[14] *See* 15 U.S.C. 1681i.

[15] *See, e.g., Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (stating that "a primary purposes of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i"). In addition, the Bureau has previously emphasized the importance of consumer reporting agencies using disputes to assess furnisher data quality. For example, the Bureau has directed consumer reporting agencies to revise their accuracy procedures to identify and take corrective action regarding data from furnishers whose dispute response behavior indicates the furnisher is not a source of reliable, verifiable information about consumers. *See* CFPB, *Supervisory Highlights:* Issue 24, Summer 2021 (June 2021), https://files.consumerfinance.gov/f/documents/cfpb_supervisory-highlights_issue-24_2021-06.pdf.

consumers to identify any negative information in their files that may be used to make credit and other eligibility determinations about them and take steps to improve their credit profiles.[16]

Consumers may suffer significant harm when they are unable to obtain all information in their files upon request. Without access to all information in their file, a consumer often cannot even take the initial steps to dispute inaccurate information in their consumer reports or take well-informed action to improve their credit profile. Disputing inaccurate information on a consumer report and improving one's credit profile, often challenging and time-consuming processes for consumers, are made even more difficult when consumers do not have access to all of the information in their file. For example, if a consumer identifies an error in an item of information in their file, but the consumer reporting agency has only disclosed to the consumer the original source of the information and not also the vendor source that directly provided the information to the consumer reporting agency and from which the error arose, the consumer would not be able to identify the source of the erroneous information and may not be able to correct it.[17]

The CFPB is issuing this advisory opinion to highlight certain file disclosure requirements imposed under FCRA section 609(a). First, this advisory opinion underscores that, to trigger a consumer reporting agency's file disclosure requirement under FCRA section 609(a),

---

[16] The FTC and the CFPB have brought several enforcement actions to address violations of the FCRA's file disclosure requirements. *See, e.g., FTC v. TransUnion Rental Screening Solutions, Inc.*, No. 1:23-cv-2659 (D. Colo. 2023) (alleging that defendant violated FCRA section 609(a) by failing to disclose the sources of information contained in consumers' files in response to consumers' requests); *United States v. HireRight Solutions, Inc.*, No. 112-cv-01313 (D.D.C. 2012) (alleging that defendant violated FCRA section 609(a)(1) by either failing to provide consumers with information in their files or failing to do so upon request); *United States v. First Advantage SafeRent, Inc.*, No. 8:10-cv-0090-PJM (D. Md. 2010) (alleging that defendant violated FCRA section 609(a)(1) by rejecting requests for file disclosure submitted by facsimile and requiring consumers complete and submit a written file disclosure request form through the U.S. mail); *In re MIB, Inc.* (*d/b/a Medical Information Bureau)*, 101 F.T.C. 415 (1983) (alleging that defendant violated FCRA section 609(a) when it required consumer to sign a release form as a prerequisite for obtaining their file disclosure).

[17] *See Leo v. AppFolio, Inc.*, No. 17-5771 RJB, 2018 WL 623647, at *8 (W.D. Wash. Jan. 30, 2018).

a consumer does not need to use specific language, such as "complete file" or "file." Next, this advisory opinion highlights the requirements regarding the information that must be disclosed to a consumer under FCRA section 609(a). Finally, this advisory opinion affirms that consumer reporting agencies must disclose to a consumer both the original source and any intermediary or vendor source (or sources) that provide the item of information to the consumer reporting agency under FCRA section 609(a).

*B. Coverage*

This advisory opinion applies to all "consumer reporting agencies," as that term is defined in FCRA section 603(f).

*C. Legal Analysis*

    1. *Requests under FCRA Section 609(a)*

Section 609(a) of the FCRA provides, with certain exceptions, that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer, among other things: (1) All information in the consumer's file at the time of the request . . .; and (2) The sources of the information." Section 610 in turn specifies the conditions and form of disclosures to consumers. The Bureau is aware that some industry stakeholders have taken the position that consumers must use specific language in order to request file disclosures under section 609(a), such as the term "complete file."[18] As the Third Circuit recently held, such requirements

---

[18] *See, e.g.*, Brief of the Chamber of Commerce of the United States as *Amicus Curiae* in Support of Appellees, *Kelly v. RealPage, Inc.*, No. 21-1672 (Aug. 5, 2021), https://www.chamberlitigation.com/cases/kelly-v-realpage-inc at 5, 28-29 (arguing that to trigger the requirements of FCRA section 609(a) "the request must specifically be for '[a]ll information in the consumer's file,' meaning the complete file"); Brief of *Amici Curiae* Consumer Data Industry Association and Professional Background Screening Association in Support of Defendants-Appellees and Affirmance, *Kelly v. RealPage, Inc.*, No. 21-1672 (Aug. 5, 2021), https://www.cdiaonline.org/wp-content/uploads/2021/08/2021-08-05-CDIA-Amicus.pdf at 7, 14-19. According to these stakeholders, a request for a "report" would not trigger section 609(a)'s disclosure obligations. These arguments were recently rejected by the Third Circuit. *Kelly v. RealPage, Inc.*, 47 F.4th 202, 219-20 (3rd Cir. Aug. 24, 2022) ("Nothing in the statute's text,

contravene the FCRA.[19]  The CFPB interprets the FCRA to require consumer reporting agencies to provide a file disclosure upon receipt of a "request" from a consumer who provides proper identification even if the consumer does not use the specific term "request," "file," "complete file," or any other specific words in making such a request.

To obtain a file disclosure, the FCRA does not require consumers to use any specific language.  Instead, the statute requires consumers to do two things: make a "request" and provide proper identification.[20]  Once these conditions are satisfied, FCRA section 609(a) states that a consumer reporting agency "shall" provide the file disclosure.  The statute's use of "shall" in this context makes clear that a consumer reporting agency may not add additional conditions as a prerequisite to complying with section 609(a).[21]

The statute does not define the term "request" as used in section 609(a).  In construing the term's meaning, the Bureau is guided by the statute's broad remedial purposes.[22]  As noted above, it is clear that one of Congress's goals in the FCRA was to facilitate consumers' access to their own information and, through such access, to promote the accuracy, privacy, and fairness of the consumer reporting system.[23]  These goals would be thwarted if a consumer's right to a file disclosure depended upon the use of specific words—particularly since no such requirement appears in the statute and because consumers are unlikely to know which words any particular

---

context, purpose, or history indicates that any magic words are required for a consumer to effect a 'request' under § 1681g(a) or that a consumer's request for 'my consumer report' is any less effective at triggering the [consumer reporting agency]'s disclosure obligations than a request for 'my file.'").

[19] *Kelly v. RealPage, Inc.*, 47 F.4th 202, 221 (3rd Cir. 2022) ("[W]hen read as a whole, the statute is unambiguous in providing that any generalized 'request' by a consumer for the [consumer reporting agency]'s information about her triggers the CRA's disclose obligation under § 1681g(a).").

[20] 15 U.S.C. 1681g(a), 1681h(a)(1).

[21] This is consistent with longstanding interpretations from FTC staff.  *See, e.g.,* Fed. Trade Comm'n, *40 Years of Experience With the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations*, at 75 & n.248, citing 1990 comment 610-2 (2011).

[22] *See supra* note 5.

[23] *See supra* notes 3, 4.

consumer reporting agency expects to hear before honoring its file disclosure obligations. As the

Third Circuit explained, if the FCRA were read otherwise:

> [C]onsumers could only access their files pursuant to [section 609(a)] if they are
> familiar with the esoteric distinction between "files" and "consumer reports" in
> the Definitions section of the FCRA. Construing [section 609(a)] in this way
> would severely limit consumers' "access to . . . information in [their] file" and
> frustrate their ability to know when they are "being damaged by an adverse credit
> report," or to "correct[] inaccurate information" in their report.[24]

Thus, to obtain a file disclosure under section 609(a), a consumer need not specifically request

"[a]ll information in the consumer's file" or request a "complete file" or even use the word

"file." For example, a consumer's request to a consumer reporting agency for a "report" or

"credit report" or "consumer report" or "file" or "record," along with proper identification,

trigger a consumer reporting agency's obligation under section 609(a).

The CFPB's interpretation of section 609(a)—that consumers do not need to use the

words "file" or "complete file" to invoke their right to a file disclosure—is consistent with the

way Congress itself refers to section 609(a) requests in parts of the FCRA. Although section

609(a) requires disclosure of all information in the consumer's "file" (with only limited,

specified exceptions), Congress used the term "consumer report" as a short-hand term for the

disclosures required by section 609(a) in some sections that refer to consumer requests and

consumer-facing materials.[25] For example, FCRA section 609(c)(1)(B)(i) requires that the

Summary of Rights provided to consumers include a description of "the right of the consumer to

obtain a copy of a consumer report under [FCRA section 609(a)]."[26] Similarly, FCRA section

---

[24] *Kelly v. RealPage, Inc.*, 47 F.4th 202, 221 (3rd Cir. Aug. 24, 2022); *see also Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 684 (N.D. Ga. 2013) ("[A] consumer who requests his 'report,' without limitation, is entitled to his entire consumer file.").

[25] Presumably Congress appreciated that "consumer report" is a an easy-to-understand term for consumers even if it is somewhat imprecise in describing what must be disclosed under section 609(a).

[26] 15 U.S.C. 1681g(c)(1)(B)(i).

612(a)(1), which requires nationwide consumer reporting agencies and nationwide specialty consumer reporting agencies to "make all disclosures pursuant to section [609(a)]" available for free annually, later refers to such file disclosures as "consumer reports" when it refers to a "streamlined process for consumers to request consumer reports under [FCRA section 612(a)(1)(A)]."[27]

 2. *Information Required to Be Disclosed Under FCRA Section 609(a)(1)*

Section 609(a) of the FCRA generally requires consumer reporting agencies to, upon request, "clearly and accurately" disclose "all information in the consumer's file at the time of the request." To meet this standard, a file disclosure must be understandable to the average consumer.[28] It must assist a consumer in identifying inaccuracies in their file, exercising their rights to dispute any incomplete or inaccurate information, and knowing when they are being impacted by adverse information in their file.[29]

Some consumers are experiencing difficulty in obtaining clear, accurate, and complete file disclosures, particularly from background screening companies. As discussed below, in this advisory opinion the Bureau is highlighting that (1) section 609(a)(1) of the FCRA requires that a consumer reporting agency clearly and accurately disclose to a consumer all information in the consumer's file at the time of the request, including, among other things, all information the consumer reporting agency provided or might provide to a user, and (2) when a consumer reporting agency provides only summarized information to a user, section 609(a)(1) of the FCRA

---

[27] 15 U.S.C. 1681j(a)(1). The implementation of free file disclosure requirement for nationwide consumer reporting agencies also makes it clear that consumers do not need use the term "file" or "complete file" to invoke their rights under FCRA section 609(a). FCRA section 612(a)(1)(B) requires the nationwide consumer reporting agencies to make free annual section 609(a) disclosures via a "centralized source." The nationwide consumer reporting agencies do so through the website annualcreditreport.com, which is the only authorized website for obtaining such disclosures and which refers to those disclosures as "credit reports." 12 CFR 1022.136.

[28] *See, e.g., Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018).

[29] 15 U.S.C. 1681i(a); 1681s-2.

requires that the consumer reporting agency provide the consumer with the information that formed the basis of the summarized information given to the user.

Section 609(a) generally requires a consumer reporting agency to provide a consumer with a file disclosure that, among other things, accurately reflects the information the consumer reporting agency provided or might provide to a user.[30]  For example, a consumer reporting agency must provide a file disclosure to the consumer that allows the consumer to see criminal history information in the format that users see or will see it, so that the consumer can check for any inaccuracies and exercise their rights to dispute any information that may be inaccurate as presented to users (such as duplicative listings for a single case).

Additionally, there are a number of situations under the FCRA where a consumer reporting agency must provide information that is not or would not be included in a user report when providing a file disclosure under FCRA section 609(a).[31]  One example of such a situation is when only summarized information, such as a credit or risk score, a tenant screening score, or a recommendation is provided to users.  The CFPB interprets FCRA section 609(a)(1)'s requirement to disclose to the consumer "all information in the consumer's file at the time of the request" to include information that formed the basis of summarized information that a consumer reporting agency provided to a user.  Providing only summarized information to users does not relieve a consumer reporting agency of its obligations under the plain language of section 609(a)(1) to provide to the consumer "all information in the consumer's file at the time of the request."

---

[30] Note that the requirement in FCRA section 609(a)(1) that consumer reporting agencies disclose "[a]ll information in the consumer's file at the time of the request" is subject to exceptions.  For example, section 609(a)(1)(B) does not require consumer reporting agencies to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer.  *See* 15 U.S.C. 1681g(a)(1)(B).

[31] *See, e.g.*, 15 U.S.C. 1681g(a)(2) (requiring disclosure of the sources of the information).

If a consumer reporting agency disclosed nothing to a consumer when it only provided summarized information to a user, the consumer would be unaware of the records upon which the summarized information was based, undermining the consumer's ability to exercise their right to dispute any incomplete or inaccurate information contained in their file.[32] This would also be the case if a consumer reporting agency disclosed to a consumer the summarized information it provided to a user without also disclosing the underlying information in the file.

The Bureau's interpretations regarding information required to be disclosed under section 609(a)(1) are consistent with the FCRA's purposes. When initially passing the FCRA, Congress stated that "under this bill credit reporting agencies are required to make full disclosure to the consumer of all of the information obtained. The consumer will then be given the opportunity to correct inaccurate or misleading data."[33] The FCRA provides consumers the right to dispute any incomplete or inaccurate information contained in the consumer's file.[34] A consumer's ability to exercise this right is damaged if consumer reporting agencies withhold information that they are required to disclose under section 609(a)(1), including information that reveals inaccuracies in reports provided to users or information that forms the basis of summarized information (such as tenant screening scores). Withholding such information would also damage a consumer's ability to know when they are being impacted by adverse information in their file.

### 3. Sources of Information under FCRA Section 609(a)(2)

Section 609(a) of the FCRA generally requires consumer reporting agencies to, upon request, disclose all information in the consumer's file at the time of the request and the sources

---

[32] 15 U.S.C. 1681i(a).

[33] 115 Cong. Rec. 33408, 33412 (1969). *See also Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 33 (2d Cir. 2016) ("The purpose of § 1681g…is to enable consumers to obtain information in order to dispute any potential inaccuracies in the file so that inaccurate information is not sent to third parties.").

[34] 15 U.S.C. 1681i(a).

of the information.[35] The CFPB is aware that, in response to these consumer requests, some consumer reporting agencies are not disclosing all sources of an item of information in the consumer's file and instead have disclosed only one source of the item of information. For example, some consumer reporting agencies that acquire public record information (e.g., eviction proceeding records) from a vendor are only disclosing to consumers the jurisdiction that was the original source for these records (e.g., the county court). The Bureau continues to interpret FCRA section 609(a)(2)'s requirement to disclose "the sources of the information" to include both the original source and any intermediary or vendor source (or sources) that provide the item of information from the original source to the consumer reporting agency.

The CFPB's interpretation is based on the plain language of FCRA section 609(a)(2) itself, which refers to "sources" in the plural. The statute does not limit this requirement to "a source" or "the original source" of the information.[36] This interpretation is also consistent with the FTC's *40 Years Report*, which states that "CRAs must disclose the sources of information in the consumer's file, except for sources of information acquired solely for use in preparing an investigative consumer report."[37]

---

[35] 15 U.S.C. 1681g(a). FCRA section 609(a)(2) requires disclosure of "[t]he sources of the information" but provides that "the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: *Provided*, That in the event an action is brought under this title, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought." 15 U.S.C. 1681g(a)(2).

[36] Courts have found that all sources of the information must be disclosed to consumers. *See. e.g., Clark v. Trans Union LLC*, No. 3:15cv391, 2016 WL 7197391, at *11 (E.D. Va. Dec. 9, 2016) (stating that "TransUnion's argument that it properly disclosed the 'ultimate sources' of information, but not the supposedly less pertinent LexisNexis disclosure as to how the data was collected, or by whom, does not persuade"); *Dennis v. Trans Union, LLC*, 2014 WL 5325231, at *7 (E.D. Pa. Oct. 20, 2014) (stating that "[a]s the plain language of Section 1681g(a)(2) does not limit 'sources' in any way, the Court will not impose a limitation on the number of sources a CRA could have, and therefore be required to disclose, for a particular piece of information"). *But see Shimon v. Equifax Info. Servs.* LLC, 994 F.3d 88, 93 (2d Cir. 2021) (granting summary judgment to consumer reporting agency because not "objectively unreasonable" to fail to disclose third-party vendor as the source of information).

[37] Fed. Trade Comm'n, *40 Years of Experience With the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations*, at 71 (2011). FTC staff published the *40 Years Report*, an updated compilation of past FTC interpretations of the FCRA, to coincide with the transfer of authority to the Bureau. Effective July 21, 2011, the Dodd-Frank Act transferred rulemaking authority related to most of the FCRA to the Bureau, giving the Bureau the primary regulatory and interpretive roles under the FCRA.

Additionally, and as described in part I.C.1, a consumer does not need to use specific language to trigger a consumer reporting agency's obligations under FCRA section 609(a)(2). As such, consumers do not need to specifically request that consumer reporting agencies identify *all* the sources of the information in their file in in order to be entitled to receive such information. This interpretation is consistent with the principle that the FCRA should be construed in light of its broad remedial purpose.[38]

The Bureau's interpretation also is consistent with the FCRA's purposes. Congress passed the FCRA in part to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report."[39] The FCRA achieves this by, among other things, providing consumers the right to obtain, upon request, all information in their file and the sources of that information and the right to dispute any incomplete or inaccurate information. The statutory right provided by FCRA section 609(a)(2) enables consumers to understand the true sources of any incomplete or inaccurate information in their file and helps them to address such errors more effectively.[40] For example, many consumer reporting agencies, including background screening companies, obtain public records information from vendors. Vendors often provide only distilled versions of these records that do not contain all the information housed by the jurisdiction from which the records originated and sometimes contain mistakes or fail to include the most up-to-date status of the public records. If a consumer

---

[38] *See supra* note 5.

[39] S. Rep. No. 91-517, at 1 (1969).

[40] Courts have recognized the importance of the disclosure of all sources for consumers to dispute inaccuracies and prevent the reoccurrence of inaccuracies. *See, e.g., Clark v. Trans Union LLC*, No. 3:15cv391, 2016 WL 7197391, at *11 (E.D. Va. Dec. 9, 2016) (stating that "the omission of LexisNexis as a source deprived Clark of her congressionally-mandated right to correct the mistake with LexisNexis, or with anyone else to whom LexisNexis also may have disclosed the inaccurate information. Moreover, the failure to include LexisNexis in the report creates a material risk that LexisNexis could continue to report inaccurate information to others in the future."); *Leo v. AppFolio, Inc.*, No. 17-5771 RJB, 2018 WL 623647, at *8 (W.D. Wash. Jan. 30, 2018) (noting that AppFolio's failure to properly identify the vendor who provided the data would make it harder for the plaintiff to correct the misreporting).

reporting agency discloses to a consumer only the original jurisdiction as the source of the information and does not also disclose the vendor, or conversely, if the consumer reporting agency discloses to a consumer only the vendor and does not also disclose the original source of the information, the consumer may not be able to correct any erroneous public records information that could be included in their files at all of the consumer reporting agencies that receive data from the vendor.[41]   Interpreting FCRA section 609(a)(2) to allow a consumer reporting agency to disclose to a consumer only a single source of the information, and not all sources of the information, would undermine the FCRA's purposes by limiting consumers' ability to understand the sources of the often highly sensitive information in their file and to address and prevent further dissemination of incomplete or inaccurate data.

In addition to provisions authorizing Federal and State enforcement,[42] the FCRA contains two provisions relating to civil liability to consumers for noncompliance.   Section 617 provides that "any person who is *negligent* in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to" the consumer's actual damages, and costs and reasonable attorney's fees.[43]   Section 616 provides that "any person who *willfully* fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to" actual or statutory damages of up to $1,000 per violation, such punitive damages as the court allows, and costs and reasonable attorney's fees.[44]   A violation is willful when it is inconsistent with "authoritative

---

[41] *See, e.g., Clark v. Trans Union LLC*, No. 3:15cv391, 2016 WL 7197391, at *11 (E.D. Va. Dec. 9, 2016); *Leo v. AppFolio, Inc.*, No. 17-5771 RJB, 2018 WL 623647, at *8 (W.D. Wash. Jan. 30, 2018).
[42] 15 U.S.C. 1681s.
[43] 15 U.S.C. 1681o (emphasis added).
[44] 15 U.S.C. 1681n (emphasis added); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007) (construing meaning of "willful").

guidance" from a relevant agency.[45]  As with any guidance issued by the CFPB on the FCRA, or predecessor agencies that were responsible for administering the FCRA prior to the CFPB's creation, consumer reporting agencies risk liability under section 616 if they violate the FCRA in a manner described in this advisory opinion, regardless of whether the consumer reporting agencies were previously liable for willful violations prior to its issuance.

## II. Regulatory Matters

This advisory opinion is an interpretive rule issued under the Bureau's authority to interpret the FCRA, including under section 1022(b)(1) of the Consumer Financial Protection Act of 2010,[46] which authorizes guidance as may be necessary or appropriate to enable the Bureau to administer and carry out the purposes and objectives of Federal consumer financial laws.[47]

The Bureau has determined that this advisory opinion does not impose any new or revise any existing recordkeeping, reporting, or disclosure requirements on covered entities or members of the public that would be collections of information requiring approval by the Office of Management and Budget under the Paperwork Reduction Act.[48]

Pursuant to the Congressional Review Act,[49] the Bureau will submit a report containing this interpretive rule and other required information to the United States Senate, the United States House of Representatives, and the Comptroller General of the United States prior to the rule's published effective date.  The Office of Information and Regulatory Affairs has designated this interpretive rule as not a "major rule" as defined by 5 U.S.C. 804(2).

---

[45] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007); *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 253 (3d Cir. 2012).
[46] Pub. L. 111-203, 124 Stat. 1376 (2010).
[47] 12 U.S.C. 5512(b)(1).
[48] 44 U.S.C. 3501-3521.
[49] 5 U.S.C. 801 *et seq.*

**Rohit Chopra,**

*Director, Consumer Financial Protection Bureau.*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LACHANTAE BUCKNER

**(b)** County of Residence of First Listed Plaintiff **Wayne County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
EQUIFAX INFORMATION SERVICES, LLC

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine / Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☒ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal / ☐ 380 Other Personal Injury / Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - / ☐ 385 Property Damage Medical Malpractice / Product Liability | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | Employment / **Other:** | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other Other | ☐ 462 Naturalization Application | | |
| **480** | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1681
Brief description of cause:
violations of the Fair Credit Reporting Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____